FILED
CLERK, U.S. DISTRICT COURT

9/10/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: ___JB___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2021 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>GURGEN ISRAYELYAN,<br><br>    Defendant. | CR 2:21-cr-00425-JFW<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 641: Theft of Government Property; 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

### COUNTS ONE THROUGH THREE

[18 U.S.C. §§ 641, 2]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.  Saint Christopher Hospice, Inc. ("SCH") was a hospice agency located at 4605 Lankershim Boulevard, Suite 704, North Hollywood, California 91602. SCH discharged all patients and ceased operating in or around September 2019.

2.  Defendant GURGEN ISRAYELYAN was the owner and Chief Executive Officer of SCH.

3. Defendant ISRAYELYAN controlled and was a signatory on a business checking account ending in x6658, in the name of SCH, held at a bank in Los Angeles County (the "SCH Bank Account").

<u>The CARES Act Provider Relief Fund</u>

4. In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which was designed to provide emergency financial assistance to the millions of Americans suffering due to the COVID-19 pandemic.

5. The CARES Act appropriated moneys to help health care providers ("Providers") that were financially impacted by COVID-19, as well as to provide care to patients who were suffering from COVID-19 and compensate providers for the cost of that care (the "Provider Relief Fund"). The United States Department of Health and Human Services ("HHS"), through its agency, the Health Resources and Services Administration ("HRSA"), oversaw and administered the Provider Relief Fund.

6. In order to rapidly provide funding to Providers during the pandemic, HRSA distributed payments under the CARES Act Provider Relief Fund ("Provider Relief Fund Payment" or "Payment") to Providers who: (a) billed Medicare fee-for-service (Parts A or B) in Calendar Year 2019; (b) were not currently terminated from participation in Medicare or precluded from receiving payment through Medicare Advantage or Part D; (c) were not currently excluded from participation in Medicare, Medicaid, and other Federal health care programs; and (d) did not currently have Medicare billing privileges revoked. Providers meeting these criteria automatically received the Provider Relief Fund Payment and did not have to apply for the funding

but were required to comply with the terms and conditions of the Provider Relief Fund ("Terms and Conditions") if they retained such funding.

### Terms and Conditions of Provider Relief Payment

7. Provider Relief Fund recipients attested to their compliance with the Terms and Conditions in one of two ways. First, Provider Relief Fund recipients were notified that they could submit an attestation through an online portal confirming receipt of the funds and agreeing to the Terms and Conditions. Second, recipients were notified that, if they kept the money for a period that exceeded 90 days from receipt, they were deemed to have accepted the Terms and Conditions of the Provider Relief Fund.

8. Providers who attested to the Terms and Conditions acknowledged that their commitment to full compliance with the terms and conditions was material to the HHS Secretary's decision to disburse Provider Relief Fund Payments to them. Providers further acknowledged that noncompliance with any Term or Condition could cause the HHS Secretary to recoup some or all of the Payment.

9. Providers who attested to the Terms and Conditions certified that they:

    a. billed Medicare in Calendar Year 2019;

    b. provided diagnoses, testing, or care for individuals with possible or actual cases of COVID-19 after January 31, 2020;

   c. were not then terminated from participation in Medicare or precluded from receiving payment through Medicare Advantage or Part D;

   d. were not then excluded from participation in Medicare, Medicaid, and other Federal health care programs;

   e. did not then have Medicare billing privileges revoked;

   f. would only use the Payment to prevent, prepare for, and respond to coronavirus, and that the Payment would reimburse the recipient only for health-care-related expenses or lost revenues that were attributable to coronavirus;

   g. provided information relating to the Payment that was true, accurate, and complete and that any deliberate omission, misrepresentation, or falsification of any information was punishable by, inter alia, criminal penalties, including but not limited to imprisonment; and

   h. would maintain appropriate records and cost documentation to substantiate the reimbursement of costs under the disbursement.

B. <u>THEFT OF GOVERNMENT PROPERTY</u>

  10. On or about April 20, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendant ISRAYELYAN knowingly and willfully stole, purloined, and converted to his own use and the use of another money of HHS, a department of the United States, namely, the following amounts, each exceeding $1,000, of an approximately $89,163 payment from the HHS Provider Relief Fund that was deposited in the SCH Bank Account on or about April 17, 2020, to which

defendant ISRAYELYAN knew he was not entitled, with the intent to deprive HHS of the use and benefit of that money:

| COUNT | APPROX. AMOUNT | DESCRIPTION |
|---|---|---|
| ONE | $10,000 | International wire transfer to A.I. |
| TWO | $10,000 | Cash withdrawal |
| THREE | $60,000 | Purchase of cashier's check |

**FORFEITURE ALLEGATION**

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

11. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendant GURGEN ISRAYELYAN that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of defendant's conviction under this Indictment.

12. Defendant ISRAYELYAN, if so convicted, shall forfeit to the United States of America the following:

    a. all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

    b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph a.

13. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or

(e) has been commingled with other property that cannot be divided without difficulty.

                                        A TRUE BILL


                                        _____/S/_____
                                        Foreperson

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Deputy Chief, Major Frauds Section

JOSEPH S. BEEMSTERBOER
Acting Chief, Fraud Section
U.S. Department of Justice

NIALL M. O'DONNELL
Assistant Chief, Fraud Section
U.S. Department of Justice

JAMES V. HAYES
Senior Litigation Counsel, Fraud Section
U.S. Department of Justice

CHRISTOPHER A. WENGER
Trial Attorney, Fraud Section
U.S. Department of Justice