TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JOSEPH S. BEEMSTERBOER
Acting Chief, Fraud Section
CHRISTOPHER A. WENGER (DC Bar No. 991048)
Trial Attorney
United States Department of Justice
Fraud Section, Criminal Division
     1400 New York Avenue, NW
     Washington, DC 20005
     Telephone: (202) 445-9670
     Facsimile: (202) 514-3708
     E-mail:    christopher.wenger@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 2:21-CR-00425-JFW |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT GURGEN ISRAYELYAN |
| v. | |
| GURGEN ISRAYELYAN, | |
| Defendant. | |

1.   This constitutes the plea agreement between Gurgen Israyelyan ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") and the Fraud Section of the Criminal Division of the United States (collectively, "the United States") in United States v. Israyelyan, No. CR 2:21-CR-00425-JFW.  This agreement is limited to the USAO and the Fraud Section of the Criminal Division of the United States Department of Justice and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2. Defendant agrees to:

a. At the earliest opportunity requested by the United States and provided by the Court, appear and plead guilty to Counts 1, 2, and 3 of the indictment in <u>United States v. Israyelyan</u>, CR No. 2:21-CR-00425-JFW, which each charge defendant with theft of government property in violation of 18 U.S.C. § 641.

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement.

d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e. Agree that all court appearances, including his change of plea hearing and sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by Order of the Chief Judge 21-105 or another order, rule, or statute. Defendant understands that, under the Constitution, the United States Code, the Federal Rules of Criminal Procedure (including Rules 11, 32, and 43), he may have the right to be physically present at these hearings. Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely. Defense counsel also joins in this consent, agreement, and waiver. Specifically, this agreement includes, but is not limited to, the following:

i. Defendant consents under Section 15002(b) of the CARES Act to proceed with his change of plea hearing by VTC or

1  telephone, if VTC is not reasonably available.

2          ii.  Defendant consents under Section 15002(b) of the

3  CARES Act to proceed with his sentencing hearing by VTC or telephone,

4  if VTC is not reasonably available.

5          iii.  Defendant consents under 18 U.S.C. § 3148 and

6  Section 15002(b) of the CARES Act to proceed with any hearing

7  regarding alleged violations of the conditions of pretrial release by

8  VTC or telephone, if VTC is not reasonably available.

9       f.   Not commit any crime; however, offenses that would be

10 excluded for sentencing purposes under United States Sentencing

11 Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

12 within the scope of this agreement.

13      g.   Be truthful at all times with the United States

14 Probation and Pretrial Services Office and the Court.

15      h.   Pay the applicable special assessments at or before

16 the time of sentencing unless defendant has demonstrated a lack of

17 ability to pay such assessments.

18      i.   To the extent applicable, make restitution in

19 accordance with the Court's order, and not seek the discharge of any

20 restitution obligation, in whole or part, in any present or future

21 bankruptcy proceeding.

22      j.   Defendant agrees that any and all criminal debt

23 ordered by the Court will be due in full and immediately.  The

24 government is not precluded from pursuing, in excess of any payment

25 schedule set by the Court, any and all available remedies by which to

26 satisfy defendant's payment of the full financial obligation,

27 including referral to the Treasury Offset Program.

28

1        k.   Complete the Financial Disclosure Statement on a form
2   provided by the United States and, within 30 days of defendant's
3   entry of a guilty plea, deliver the signed and dated statement, along
4   with all of the documents requested therein, to the United States by
5   either email at usacac.FinLit@usdoj.gov (preferred) or mail to the
6   USAO Financial Litigation Section at 300 North Los Angeles Street,
7   Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's
8   ability to pay criminal debt shall be assessed based on the completed
9   Financial Disclosure Statement and all required supporting documents,
10  as well as other relevant information relating to ability to pay.

11       l.   Authorize the United States to obtain a credit report
12  upon returning a signed copy of this plea agreement.

13       m.   Consent to the United States inspecting and copying
14  all of defendant's financial documents and financial information held
15  by the United States Probation and Pretrial Services Office.

16       n.   Defendant understands and acknowledges that as a
17  result of pleading guilty pursuant to this agreement, defendant will
18  be excluded from Medicare, Medicaid, and all Federal health care
19  programs.  Defendant agrees to complete and execute all necessary
20  documents provided by the United States Department of Health and
21  Human Services, or any other department or agency of the federal
22  government, to effectuate this exclusion within 60 days of receiving
23  the documents.  This exclusion will not affect defendant's right to
24  apply for and receive benefits as a beneficiary under any Federal
25  health care program, including Medicare and Medicaid.

26                    THE UNITED STATES' OBLIGATIONS
27       3.   The United States agrees to:
28            a.   Not contest facts agreed to in this agreement.

                                    4

1    b.    Abide by all agreements regarding sentencing contained
2  in this agreement.

3    c.    At the time of sentencing, provided that defendant
4  demonstrates an acceptance of responsibility for the offenses up to
5  and including the time of sentencing, recommend a two-level reduction
6  in the applicable Sentencing Guidelines offense level, pursuant to
7  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
8  additional one-level reduction if available under that section.

9    d.    Not seek a sentence of imprisonment above the high end
10 of, and make no recommendation as to the point within the applicable
11 Sentencing Guidelines range at which a term of imprisonment should be
12 selected.

13    e.    Except for criminal tax violations (including
14 conspiracy to commit such violations chargeable under 18 U.S.C.
15 § 371), not further criminally prosecute defendant for violations of
16 18 U.S.C. § 1343 or other applicable offenses arising out of
17 defendant's conduct described in the agreed-to factual basis set
18 forth in paragraph 11 below regarding defendant's submission of five
19 loan applications to the U.S. Small Business Administration on behalf
20 of Saint Christopher Hospice, Inc., GMG Holdings LLC, Double G
21 Ventures LLC, One Touch Assistants LLC, and G.I. Construction Group
22 that contained numerous material misrepresentations.  Defendant
23 understands that the United States is free to criminally prosecute
24 defendant for any other unlawful past conduct or any unlawful conduct
25 that occurs after the date of this agreement.  Defendant agrees that
26 at the time of sentencing the Court may consider the uncharged
27 conduct in determining the applicable Sentencing Guidelines range,
28 the propriety and extent of any departure from that range, and the

1  sentence to be imposed after consideration of the Sentencing

2  Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

3  NATURE OF THE OFFENSES

4      4.    Defendant understands that for defendant to be guilty of

5  the crimes charged in Counts 1, 2, and 3, that is, theft of

6  government property, in violation of Title 18, United States Code,

7  Section U.S.C. § 641, the following must be true: (a) the defendant

8  knowingly converted to defendant's use, or converted to the use of

9  another, money with the intention of depriving the owner of the use

10  or benefit of the money; (b) the money belonged to the United States;

11  and (c) the value of the money was more than $1,000.

12  PENALTIES AND RESTITUTION

13      5.    Defendant understands that the statutory maximum sentence

14  that the Court can impose for each violation of 18 U.S.C. § 641 as

15  charged in Counts 1, 2, and 3 is: 10 years' imprisonment; a 3-year

16  period of supervised release; a fine of $250,000 or twice the gross

17  gain or gross loss resulting from the offense, whichever is greatest;

18  and a mandatory special assessment of $100.

19      6.    Defendant understands, therefore, that the total maximum

20  sentence for all offenses to which defendant is pleading guilty is:

21  30 years' imprisonment; a 3-year period of supervised release; a fine

22  of $750,000 or twice the gross gain or gross loss resulting from the

23  offenses, whichever is greatest; and a mandatory special assessment

24  of $300.

25      7.    Defendant understands that defendant will be required to

26  pay full restitution to the victims of the offenses to which

27  defendant is pleading guilty.  Defendant agrees that, in return for

28  the United States' compliance with its obligations under this

6

agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charges.  The parties currently believe that the applicable amount of restitution is approximately $517,262, which includes relevant conduct and uncharged conduct, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

8.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant

1  understands that he is pleading guilty to a felony and that it is a
2  federal crime for a convicted felon to possess a firearm or
3  ammunition.   Defendant understands that the convictions in this case
4  may also subject defendant to various other collateral consequences,
5  including but not limited to mandatory exclusion from providing
6  services paid for under a federal health care benefit program for a
7  minimum of five years, revocation of probation, parole, or supervised
8  release in another case, and suspension or revocation of a
9  professional license.   Defendant understands that unanticipated
10 collateral consequences will not serve as grounds to withdraw
11 defendant's guilty pleas.

12      10.  Defendant understands that, if defendant is not a United
13 States citizen, the felony convictions in this case may subject
14 defendant to: removal, also known as deportation, which may, under
15 some circumstances, be mandatory; denial of citizenship; and denial
16 of admission to the United States in the future.   The Court cannot,
17 and defendant's attorneys also may not be able to, advise defendant
18 fully regarding the immigration consequences of the felony
19 convictions in this case.   Defendant understands that unexpected
20 immigration consequences will not serve as grounds to withdraw
21 defendant's guilty pleas.

22                           FACTUAL BASIS

23      11.  Defendant admits that defendant is, in fact, guilty of the
24 offenses to which defendant is agreeing to plead guilty.   Defendant
25 and the United States agree to the statement of facts provided below
26 and agree that this statement of facts is sufficient to support pleas
27 of guilty to the charges described in this agreement and to establish
28 the Sentencing Guidelines factors set forth in paragraph 13 below but

1  is not meant to be a complete recitation of all facts relevant to the
2  underlying criminal conduct or all facts known to either party that
3  relate to that conduct.

4        At all times relevant to the Indictment, the United States
5  Department of Health and Human Services ("HHS"), through its agency,
6  the Health Resources and Services Administration ("HRSA"), oversaw
7  and administered the Provider Relief Fund.  Pursuant to the Provider
8  Relief Fund, HRSA distributed federal funds appropriated under the
9  Coronavirus Aid, Relief, and Economic Security ("CARES") Act to help
10 health care providers that were financially impacted by COVID-19, as
11 well as to provide care to patients who were suffering from COVID-19
12 and compensate providers for the cost of that care.

13       In order to rapidly provide funding during the pandemic, HRSA
14 automatically distributed Provider Relief Fund payments to providers
15 who met certain criteria; however, these providers were required to
16 comply with the terms and conditions of the Provider Relief Fund if
17 they retained the funding.  Among other ways, Provider Relief Fund
18 payment recipients attested to their compliance with the terms and
19 conditions, and confirmed that they received the funds, by submitting
20 an attestation to HRSA through an online portal.

21       Providers who attested to the terms and conditions acknowledged
22 that their commitment to full compliance with the terms and
23 conditions was material to the HHS Secretary's decision to disburse
24 Provider Relief Fund Payments to them.  Providers who attested made
25 additional certifications, including: (a) that they provided
26 diagnoses, testing, or care for individuals with possible or actual
27 cases of COVID-19 after January 31, 2020; and (b) that they would
28 only use the payment to prevent, prepare for, and respond to

1  coronavirus, and that the payment would reimburse the recipient only
2  for health-care-related expenses or lost revenues that were
3  attributable to coronavirus.

4  Defendant was the owner and Chief Executive Officer of Saint
5  Christopher Hospice, Inc. ("SCH"), a hospice agency located in North
6  Hollywood, California.

7  On or about April 20, 2020, in Los Angeles County, within the
8  Central District of California, and elsewhere, defendant knowingly
9  and willfully stole, purloined, and converted to his own use and the
10 use of another money of HHS, a department of the United States, in
11 the amounts of $10,000, $10,000, and $60,000, each exceeding $1,000,
12 of an approximately $89,163 payment from the Provider Relief Fund
13 made to SCH, to which defendant knew he was not entitled, with the
14 intent to deprive HHS of the use and benefit of that money.

15 SCH ceased operating in or around September 2019.  On or about
16 April 17, 2020, defendant received an $89,163 Provider Relief Fund
17 payment intended for SCH.  Approximately three days later, on April
18 20, 2020, defendant knowingly converted 90% of the Provider Relief
19 Fund payment to his personal use and the use of others by wiring
20 $10,000 to a family member in Armenia, by withdrawing $10,000 in cash
21 for his personal use, and by transferring $60,000 via a cashier's
22 check to another family member.  Defendant spent the balance of the
23 Provider Relief Fund payment, approximately $9,163, on various
24 personal purchases.

25 On or about June 2, 2020, defendant submitted, or caused to be
26 submitted, an attestation to HRSA through its online portal,
27 attesting to SCH's receipt of the Provider Relief Fund payment and
28 attesting to comply with the Provider Relief Fund terms and

conditions.   However, as described above, and contrary to his
attestation, none the Provider Relief Funds that the defendant
transferred or spent were used in compliance with the terms and
conditions of the Provider Relief Fund.

In addition, after defendant received and converted the Provider
Relief Fund payment in April 2020, defendant submitted, or caused to
be submitted, five Economic Injury Disaster Loan ("EIDL")
applications to the U.S. Small Business Administration ("SBA"),
including an application on behalf of SCH, which ceased operating
around September 2019.   The EIDL program was a disaster relief
program administered by the SBA that was designed to provide economic
relief to businesses experiencing a temporary loss of revenue due to
a disaster, such as the COVID-19 pandemic.   The EIDL program provided
loan assistance, including up to $10,000 advances, to eligible
entities and the funds were disbursed directly from the United States
Treasury.

Specifically, in or around June and July 2020, defendant
submitted, or caused to be submitted, EIDL applications to the SBA on
behalf of SCH, GMG Holdings LLC, Double G Ventures LLC, and One Touch
Assistants LLC, all entities that defendant controlled.   In addition,
in or around February 2021, defendant submitted, or caused to be
submitted, an EIDL application to the SBA on behalf of G.I.
Construction Group, another entity controlled by defendant.   In the
EIDL applications for each of these five entities, defendant made, or
caused to be made, numerous material misrepresentations, including,
for example, misrepresentations regarding certain entities' formation
dates, misrepresentations regarding the entities' revenues and
employee numbers, and misrepresentations regarding the entities'

operating statuses. As a result of the material misrepresentations, on various dates in or around June and July 2020, four or the five EIDL applications were approved and the SBA disbursed $428,100 of EIDL proceeds, as summarized below:

| EIDL Applicant | Loan Status | EIDL Loan Disbursed | EIDL Advance Disbursed |
|---|---|---|---|
| Saint Christopher Hospice, Inc. | Approved | $149,900 | $10,000 |
| GMG Holdings LLC | Approved | $129,900 | $10,000 |
| Double G Ventures LLC | Approved | $48,400 | $0 |
| One Touch Assistants LLC | Approved | $77,900 | $2,000 |
| G.I. Construction Group | Declined | $0 | $0 |
| | **TOTAL:** | **$406,100** | **$22,000** |

Defendant knew he was not entitled to these EIDL proceeds, and defendant subsequently knowingly converted the entirety of the $428,100 to his personal use, with the intention of depriving the SBA of the intended use and benefit of that money.

Defendant committed all the above acts knowingly and willfully, and with the intent to deprive the owner of the use or benefit of the money.

SENTENCING FACTORS

12. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds

appropriate up to the maximum set by statute for the crimes of conviction.

13. Defendant and the United States agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. § 2B1.1(a)(2) |
| Loss Amount (> $250k): | +12 | U.S.S.G. § 2B1.1(b)(1)(G) |

The United States will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below.  Subject to paragraph 26 below, defendant and the United States agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the United States were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the United States, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the United States would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

14. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

1    15.   Defendant and the United States reserve the right to argue

2   for a sentence outside the sentencing range established by the

3   Sentencing Guidelines based on the factors set forth in 18 U.S.C.

4   § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

5                    WAIVER OF CONSTITUTIONAL RIGHTS

6    16.   Defendant understands that by pleading guilty, defendant

7   gives up the following rights:

8         a.   The right to persist in a plea of not guilty.

9         b.   The right to a speedy and public trial by jury.

10        c.   The right to be represented by counsel -- and if

11  necessary have the Court appoint counsel -- at trial.  Defendant

12  understands, however, that, defendant retains the right to be

13  represented by counsel -- and if necessary have the Court appoint

14  counsel -- at every other stage of the proceeding.

15        d.   The right to be presumed innocent and to have the

16  burden of proof placed on the government to prove defendant guilty

17  beyond a reasonable doubt.

18        e.   The right to confront and cross-examine witnesses

19  against defendant.

20        f.   The right to testify and to present evidence in

21  opposition to the charges, including the right to compel the

22  attendance of witnesses to testify.

23        g.   The right not to be compelled to testify, and, if

24  defendant chose not to testify or present evidence, to have that

25  choice not be used against defendant.

26        h.   Any and all rights to pursue any affirmative defenses,

27  Fourth Amendment or Fifth Amendment claims, and other pretrial

28  motions that have been filed or could be filed.

1                      WAIVER OF APPEAL OF CONVICTION

2        17.  Defendant understands that, with the exception of an appeal

3   based on a claim that defendant's guilty pleas were involuntary, by

4   pleading guilty defendant is waiving and giving up any right to

5   appeal defendant's convictions on the offenses to which defendant is

6   pleading guilty.  Defendant understands that this waiver includes,

7   but is not limited to, arguments that the statute to which defendant

8   is pleading guilty is unconstitutional, and any and all claims that

9   the statement of facts provided herein is insufficient to support

10  defendant's pleas of guilty.

11              LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

12       18.  Defendant agrees that, provided the Court imposes a total

13  term of imprisonment on all counts of conviction of within or below

14  the range corresponding to an offense level of 15 and the criminal

15  history category calculated by the Court, defendant gives up the

16  right to appeal all of the following: (a) the procedures and

17  calculations used to determine and impose any portion of the

18  sentence; (b) the term of imprisonment imposed by the Court; (c) the

19  fine imposed by the Court, provided it is within the statutory

20  maximum; (d) to the extent permitted by law, the constitutionality or

21  legality of defendant's sentence, provided it is within the statutory

22  maximum; (e) the amount and terms of any restitution order, provided

23  it requires payment of no more than $517,262; (f) the term of

24  probation or supervised release imposed by the Court, provided it is

25  within the statutory maximum; and (g) any of the following conditions

26  of probation or supervised release imposed by the Court: the

27  conditions set forth in Second Amended General Order 20-04 of this

28  Court; the drug testing conditions mandated by 18 U.S.C.

§§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

19.   The United States agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 15 and the criminal history category calculated by the Court, the United States gives up its right to appeal any portion of the sentence, with the exception that the United States reserves the right to appeal the amount of restitution ordered if that amount is less than $517,262.

RESULT OF WITHDRAWAL OF GUILTY PLEA

20.   Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the United States will be relieved of all of its obligations under this agreement; and (b) should the United

States choose to pursue any charge or any civil, administrative, or regulatory action that was not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

21.   Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the United States may: (a) ask the Court to resentence defendant on any remaining count of conviction, with both the United States and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on any remaining count of conviction, with both the United States and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining conviction, sentence, and plea agreement intact.   Defendant agrees that the choice among these three options rests in the exclusive discretion of the United States.

### EFFECTIVE DATE OF AGREEMENT

22.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and a United States Department of Justice Trial Attorney.

## BREACH OF AGREEMENT

23.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and a United States Department of Justice Trial Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the United States may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the United States to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the United States in writing.  If the United States declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas; and (b) the United States will be relieved of all its obligations under this agreement.

24.   Following the Court's finding of a knowing breach of this agreement by defendant, should the United States choose to pursue any charge or any civil, administrative, or regulatory action that was not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

1        c.    Defendant agrees that: (i) any statements made by
2   defendant, under oath, at the guilty plea hearing (if such a hearing
3   occurred prior to the breach); (ii) the agreed to factual basis
4   statement in this agreement; and (iii) any evidence derived from such
5   statements, shall be admissible against defendant in any such action
6   against defendant, and defendant waives and gives up any claim under
7   the United States Constitution, any statute, Rule 410 of the Federal
8   Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
9   Procedure, or any other federal rule, that the statements or any
10  evidence derived from the statements should be suppressed or are
11  inadmissible.

12              COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
13                            OFFICE NOT PARTIES

14       25.   Defendant understands that the Court and the United States
15  Probation and Pretrial Services Office are not parties to this
16  agreement and need not accept any of the United States' sentencing
17  recommendations or the parties' agreements to facts or sentencing
18  factors.

19       26.   Defendant understands that both defendant and the United
20  States are free to: (a) supplement the facts by supplying relevant
21  information to the United States Probation and Pretrial Services
22  Office and the Court, (b) correct any and all factual misstatements
23  relating to the Court's Sentencing Guidelines calculations and
24  determination of sentence, and (c) argue on appeal and collateral
25  review that the Court's Sentencing Guidelines calculations and the
26  sentence it chooses to impose are not error, although each party
27  agrees to maintain its view that the calculations in paragraph 13 are
28  consistent with the facts of this case.  While this paragraph permits

both the United States and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the United States' obligations not to contest the facts agreed to in this agreement.

27. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorneys, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

28. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the United States and defendant or defendant's attorneys, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

1           PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2     29.  The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF

7 CALIFORNIA

8 TRACY L. WILKISON
United States Attorney

9

10 _____      03/08/2022

Christopher A. Wenger         Date

11 Trial Attorney, Fraud Section

12 _____      03-05-2022

Gurgen Israyelyan          Date

13 Defendant

14 _____  Stanley L. Friedman /HK  02/07/2022

Stanley L. Friedman         Date

15 Art Kalantar
Attorneys for Defendant Gurgen

16 Israyelyan

17

18              CERTIFICATION OF DEFENDANT

19     I have read this agreement in its entirety.  I have had enough

20 time to review and consider this agreement, and I have carefully and

21 thoroughly discussed every part of it with my attorneys.  I

22 understand the terms of this agreement, and I voluntarily agree to

23 those terms.  I have discussed the evidence with my attorneys, and my

24 attorneys have advised me of my rights, of possible pretrial motions

25 that might be filed, of possible defenses that might be asserted

26 either prior to or at trial, of the sentencing factors set forth in

27 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions,

28 and of the consequences of entering into this agreement.  No

1  promises, inducements, or representations of any kind have been made

2  to me other than those contained in this agreement.  No one has

3  threatened or forced me in any way to enter into this agreement.  I

4  am satisfied with the representation of my attorneys in this matter,

5  and I am pleading guilty because I am guilty of the charges and wish

6  to take advantage of the promises set forth in this agreement, and

7  not for any other reason.

8

                                                      03-05-2022

9  Gurgen Israyelyan                        Date
   Defendant

10

11             CERTIFICATION OF DEFENDANT'S ATTORNEY

12      I am Gurgen Israyelyan's attorney.  I have carefully and

13  thoroughly discussed every part of this agreement with my client.

14  Further, I have fully advised my client of his rights, of possible

15  pretrial motions that might be filed, of possible defenses that might

16  be asserted either prior to or at trial, of the sentencing factors

17  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

18  provisions, and of the consequences of entering into this agreement.

19  To my knowledge: no promises, inducements, or representations of any

20  kind have been made to my client other than those contained in this

21  agreement; no one has threatened or forced my client in any way to

22  enter into this agreement; my client's decision to enter into this

23  agreement is an informed and voluntary one; and the factual basis set

24  forth in this agreement is sufficient to support my client's entry of

25  guilty pleas pursuant to this agreement.

26  _____/Stanley L. Friedman/AK 03/07/2022

27  Stanley L. Friedman                      Date
    Art Kalantar

28  Attorneys for Defendant Gurgen Israyelyan